

FILED

AUG 18 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ROBERT CLAYTON,**

                              **Plaintiff,**

v.                                                    **2:10cv284**

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration,**

                              **Defendant.**

## MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

Plaintiff Robert E. Clayton ("Clayton or "plaintiff") brought this action under 42 U.S.C. §

405(g) seeking judicial review of the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claim for a period of disability insurance benefits

("DIB"), and supplemental security income ("SSI") under Title XVI of the Social Security Act. By

order filed October 22, 2010, this action was referred to a United States Magistrate Judge for a

Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and

Rule 72(b) of the Federal Rules of Civil Procedure. The undersigned issued a Report and

Recommendation on June 30, 2011. Following objections, the matter was remanded for further

review.

The objections note an error in the original report's description of two agency consultants

who reviewed Clayton's medical records, and offered assessments of his impairments. The analysis

section of the original report incorrectly described the three agency doctors collectively as

1

"consulting examiners." After reviewing the records of the two non-examining agency doctors, the undersigned finds that – along with the records of Clayton's treating provider and the agency's consulting examiner – the medical opinions provide substantial evidence to support the Commissioner's decision. Accordingly, for the reasons more carefully stated below, the Court recommends that the decision of the Commissioner be affirmed.

## I.  PROCEDURAL BACKGROUND

On July 23, 2007, Clayton filed applications for SSI and DIB, alleging that he had been disabled since January 1, 2002, due to left leg and hip problems, depression, diabetes, hypertension and breathing problems. (R. 106, 112, 145). The Commissioner denied his application initially (R. 41-42), and upon reconsideration, (R. 43-44 ). Clayton requested an administrative hearing, which was conducted July 14, 2009. (R. 22-40).

On July 24, 2009, Administrative Law Judge ("ALJ") Irving Pianin concluded that plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for SSI and DIB. (R. 8-20). Clayton requested review by the Appeals Council which denied review on May 8, 2010, (R. 1-5), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), on June 16, 2010, Clayton filed this action seeking judicial review of the Commissioner's final decision. The Commissioner filed his answer on October 18, 2010. Both parties filed cross motions for summary judgment. This case is now before the Court to resolve the pending motions.

## II.  FACTUAL BACKGROUND

Clayton is 53, moderately educated, with previous relevant work as an unskilled laborer. (R. 26, 37). In his application and at the hearing, Clayton alleged he could not work due to a variety of

physical impairments related to a prior knee injury, hip surgery (R. 27-28, 145), breathing difficulties including COPD and tobacco use disorder (R. 279, 287-290), obesity (R. 342), and hepatitis (R. 341, 374) (See R. 145). Despite the numerous physical conditions described in his application and at the hearing, Clayton's appeal primarily contends that the ALJ improperly assessed the evidence of his mental impairments, which include depression and anxiety. (ECF. No. 12, p. 4-7).

As relevant to these issues, the Record indicates that Clayton first received treatment for depression beginning in 2007. At the time, he stated his depression had begun several years earlier and included difficulty interacting with family members, social withdrawal and a loss of interest in his usual activities. (R. 374). He was prescribed medication, and referred to the Community Services Board for additional treatment. (R. 374-77). His symptoms improved on the medication which he continued taking on an as-needed basis. (R. 366 "the depression has improved", 368 "Status: Improved").

In September 2008, Clayton sought treatment with Chesapeake Mental Health Services where he reported a depressed mood, anhedonia[1], low energy, poor sleep and a low appetite. (R. 425). He saw Psychiatrist Meenakshi Parma, M.D. whose initial evaluation quotes Clayton's chief complaint: "I don't know what I need. I guess I'm depressed." (R. 425). Dr. Parma's mental status exam revealed that Clayton was dressed casually, "a little disheveled," but made good eye contact throughout the interview. His speech was normal. His mood was depressed and constricted, but he had fair insight and judgment and he denied any suicidal or homicidal thoughts, denied hallucinations, and denied any other psychotic symptoms. (R. 427). Dr. Parma diagnosed Clayton

---

[1] Anhedonia is the medical term for the inability to derive pleasure from acts that normally give pleasure. Dorlands Illustrated Medical Dictionary 30th Ed., p. 90 (2003).

with dysthymic disorder, alcohol dependence and poly-substance dependence in full sustained remission. At this initial visit, Dr. Parma reported Clayton had a Global Assessment of Functioning, or GAF score of 50.[2] Dr. Parma prescribed medication for Clayton's depression, as well as follow-up treatment. (R. 427-29). In the several ensuing visits, Clayton generally reported that his depression improved with medication, and that his mood was stable, however, Dr. Parma continually assessed him with a GAF score of 50. (R. 411, 414, 416, 419, 420, 422). In Clayton's last visit of record, June 11, 2009, Dr. Parma described his mood as "fine" with a "stable mood and congruent affect." His thought process was goal directed, he denied psychotic symptoms and his insight and judgment were fair. (R. 411).

In addition to treatment at CSB and with Dr. Parma, Clayton's mental impairments were evaluated by three agency-related doctors, Jodi Alperin, Psy. D., Leslie Montgomery, Ph.D. and David Deaver, Ph.D. Dr. Alperin first evaluated Clayton in March, 2008 at the request of the state agency. (R. 312-17). Dr. Alperin reviewed Clayton's history and medications. Her mental status evaluation noted that Clayton's behavior was appropriate, with speech and language within normal limits. His thought processes were logical and goal directed with no disturbance of thought content. She reported that Clayton described his mood as depressed and his affect flat, but he was fully oriented to time, place and person. He showed some problems with short-term memory, but no significant problems with concentration. She assessed his judgment and insight as "probably very poor". She diagnosed him with major depressive disorder, mild to moderate, and alcohol and poly-

---

[2] The GAF Score is used by clinicians to rate a subject's overall level of functioning. A GAF score between 51 and 60 indicates moderate difficulty in social, occupational or school functioning, while a score between 41-50 suggests serious impairments. <u>American Psychiatric Assoc. Diagnosis and Statistical Manual of Mental Disorders</u>, 48 (4th Ed., text rev. 2000).

substance dependence, both in "sustained full remission". (R. 314-15). She assessed a GAF score of 57 which corresponds to moderate symptoms. With regard to functional limitations, Dr. Alperin concluded that Clayton "could complete simple and repetitive tasks, but might not be able to complete detailed and complex tasks because of some subjective problems with concentration." (R. 316). She indicated he might have difficulty maintaining regular attendance in performing at work on a consistent basis due to low motivation and low energy, suggesting he "might need some additional supervision because of these slight problems with concentration and the lack of motivation." She reported that he would have difficulty accepting instructions from supervisors "given his own report of difficulty working with authority figures." She also assessed that Clayton's ability to interact with coworkers in the public would "probably be significantly impacted by his social isolation and irritability around others." (R. 317). Dr. Alperin's only assessment occurred over one year prior to the hearing, and before Clayton's treatment with Dr. Parma.

Dr. Leslie Montgomery completed a Mental Residual Functional Capacity Assessment on March 25, 2008. Her assessment, based upon a review of records and Dr. Alperin's mental status exam, noted Clayton as markedly limited in the ability to interact appropriately with the general public and set realistic goals or make plans independently of others and moderately limited in other areas of sustained concentration and persistence as well as social interaction. (R. 319-320). Dr. Montgomery's assessment also concluded that Clayton was not significantly limited in his ability to remember work procedures or understand and remember, or carry out very short, simple instructions. She found no significant limits in Clayton's ability to perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, and make simple work-related decisions. Dr. Montgomery found Dr. Alperin's report consistent with Clayton's abilities as

she determined in areas of making occupational adjustments, performance adjustments, and other work-related activities. Dr. Montgomery's summary conclusion was that Clayton was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. 321).

Another state agency expert, David Deaver, Ph.D., also reviewed Clayton's records and prepared a Functional Capacity Assessment. Dr. Deaver found only moderate limitations in social interaction and sustained concentration and persistence. In general, Dr. Deaver's analysis is similar to the Capacity Evaluation prepared by Dr. Montgomery, concluding that Clayton "remains capable of performing simple routine work." (R. 397).

At the hearing on Clayton's claim, he first testified that he could not remember when he last worked, but then recalled working a few weeks for a tank cleaning company a few years previously. (R. 27). When asked why he had not worked during this period of time, Clayton said "one reason is my leg", describing the previous injury to his left hip and knee. (R. 27-28). He stated that his leg condition limited his ability to lift to approximately 10 pounds, (R. 33), and also described problems sitting and standing for long periods of time. Id. He described very little activity, stating that he does not drive, go food shopping, or engage in any hobbies or outdoor activity. He stated he generally stays in an RV trailer where he lives, watching television. (R. 34). He described his mental condition as "anti-social," stating he has a hard time associating with people. (R. 33). He stated that he does not fix his own meals or go grocery shopping, but sometimes eats with his step-father and his wife who reside in a home on the same property. (R. 36). While he sometimes watches television with his family, he testified that he could not do so for long periods "because they basically get on my nerves and I just can't, you know, handle being around them for so long." Id.

6

In addition to Clayton's testimony, the ALJ heard from Robin Stromberg, a vocational expert ("V.E."). The V.E. testified based upon limitations framed by the ALJ that Clayton could work as a hand-packer, which she classified as light duty, unskilled labor. (R. 37-38). She testified there were approximately 1,300 such jobs locally and 63,000 available nationally. On cross-examination, Clayton's attorney asked whether the hand-packer position would "allow for extra supervision to enable the employee to complete the assigned work tasks" and the V.E. answered that it would not. (R. 38). Clayton's attorney also asked questions to confirm that a hand-packer would not be able to be absent from work at their discretion, and would have to accept instruction from supervisors and complete tasks as assigned. Id.

After reviewing the foregoing evidence the ALJ denied benefits, finding that Clayton retained the residual functional capacity to perform light duty work, with only occasional contact with co-workers or the public, and limited to simple, routine, one or two step tasks.

### III.  STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

7

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. §§ 1381(a) and 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1.    Is the individual involved in substantial gainful activity?

2.    Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3.    Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4.    Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5.    Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.   ALJ's Decision

In this case, the ALJ made the following findings under the five part analysis: (1) The ALJ found that Clayton had not engaged in substantial gainful activity since January 1, 2002 (the alleged onset date; (2) Clayton had severe impairments of a left lower extremity disorder, (related to his hip surgery and a knee injury), obesity and a mood disorder; (3) His combination of impairments did not meet one of the listed impairments in Appendix 1; (4) Clayton had the RFC to perform light work, with specified limitations on lifting, as well as limitations on interaction with others due to moderate limits in social functioning, concentration, persistence and pace.  Finally, although the ALJ concluded that Clayton could not perform his past relevant work, he did identify jobs which exist in substantial numbers in the national economy which Clayton could perform. (R. 13-19).

In his Motion for Summary Judgment, Clayton alleges that the ALJ failed to properly evaluate and weigh the medical evidence, including specifically the reports from Drs. Parma, Alperin and Montgomery.  He also argues that the ALJ's assessment of his RFC is not supported by substantial evidence.  Finally, he claims the VE's testimony concerning available work as a hand packer was insufficient to show a significant number of jobs in the national economy which Clayton could perform.  The Court will address each of these arguments in turn.

**B.**     **The ALJ adequately explained the weight he assigned to medical opinions.**

In his Motion for Summary Judgment, Clayton first challenges the ALJ's analysis of the

medical evidence.  The ALJ found that Clayton had the RFC to perform light work subject to

detailed limitations or lifting as well as limits on interaction with others and limits on the complexity

of assigned tasks.  Those limits – according to the ALJ's written analysis – account for the medical

evidence of record concerning Clayton's physical impairments and his moderate limitations in social

functioning, concentration, persistence and pace.  (R. 15).

In making the RFC determination, the ALJ must consider the objective medical evidence in

the record, including the medical opinions of the treating physicians and the non-examining medical

consultants.  Generally, the opinion of a treating physician is accorded more weight than that of a

non-examining consultant.  20 C.F.R. § 416.927(d)(1).  Under the federal regulations and Fourth

Circuit case law, a treating physician's opinion merits "controlling weight" if the opinion "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record."  Id. at §§ 416.927(d)(2) and

1527(d)(2).  Conversely, "if a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig,

76 F.3d at 590.  When the evidence is such that reasonable minds could differ as to whether a

claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in

the evidence.  Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005).

Here, the ALJ properly evaluated the opinions of the medical providers and non-examining

consultants and provided detailed reasons for his assessment.  The undersigned finds no error in that

assessment.

11

The Court first notes that Clayton presented, both by his application and at the hearing, with a number of alleged impairments. The ALJ found some of these severe, including his left leg limitations, obesity, and a mood disorder. (R. 13). The other limitations found in the medical records, including Clayton's treatment for diabetes, asthma, hypertension and drug and alcohol abuse either did not pose any limits on Clayton's ability to work or were in full sustained remission. (R. 14). Clayton has not challenged these findings in this Court.

Clayton's summary judgment argument is primarily directed at the ALJ's evaluation of the medical evidence concerning Clayton's mental impairments, and the limits imposed by the ALJ to address those impairments. His chief complaint is that the ALJ did not properly weigh the opinions of Drs. Parma, Alperin and Montgomery who, Clayton argues, found him to be "markedly limited in social functioning." (Plaintiff's Mem. in Support of Summary Judgment, ECF No. 12, p. 14).

The ALJ carefully evaluated all of the evidence on Clayton's mental condition, devoting nearly two full pages of his opinion to recounting specific excerpts from the records of these three doctors. Contrary to Clayton's suggestion, these doctors did not uniformly find Clayton markedly limited in the general area of social interaction. Specifically, Dr. Montgomery found Clayton markedly limited only in his ability to interact with the general public. In the more relevant categories of social interaction, including skills such as the ability to interact with co-workers and respond appropriately to supervisors, Dr. Montgomery found Clayton only moderately limited. (R. 320).

Dr. Deaver, another agency consultant, found the same moderate limitations with regard to co-workers and supervisors while Dr. Alperin stated that Clayton might have trouble with supervisors "given his own report of difficulty working with authority figures." (R. 317). Dr.

Alperin did note that Clayton's inability to interact with co-workers and the public would "probably be significantly impacted by his social isolation and irritability around others," and that he might need additional supervision because of "slight problems" with concentration and the "lack of motivation." (Id.).

While these findings by Dr. Alperin might support a finding of work precluding disability, they do not mandate one.[3] The issue before this Court is whether the ALJ properly analyzed this medical evidence in making his own determination concerning Clayton's ability to engage in substantial gainful employment. The undersigned concludes that he did.

Importantly, the ALJ fashioned detailed limits on Clayton's RFC, to account for his mental impairments, including only occasional contact with co-workers and/or the public and performance of only simple, routine, repetitive, one or two step tasks not performed in a fast paced environment and involving relatively few work place changes. (R. 15). None of the doctors Clayton relies upon suggested he was incapable of performing gainful employment within these limitations. To the contrary, Dr. Montgomery specifically opined that Clayton was "able to meet the basic mental

---

[3]Clayton has not challenged the ALJ's finding that his medical impairment did not meet or exceed the criteria for a listed impairment under 20 C.F.R. § 404, Subpart P, Appx. 1. The Social Security regulations prescribe special techniques for evaluating mental impairments. 20 C.F.R. § 404.1520A(a). If the claimant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decomposition. Because Clayton had a medically determinable mental impairment, the ALJ applied the special technique required by the regulations and rated his impairment in each of the four functional areas. Based on the records he found no evidence of decomposition in the fourth area; moderate limitations in social functioning; concentration, persistence and pace; and only mild limitations in activities of daily living. (R. 14). Under these circumstances the ALJ properly found that Clayton's mood disorder was not a listed impairment, and his decision is supported by substantial evidence.

demands of competitive work on a sustained basis despite the limitations resulting from his impairments. (R. 321). Similarly, Dr. Deaver concurred with Dr. Montgomery's findings noting that Clayton "remains capable of performing simple routine work." (R. 397).

Dr. Alperin's summary was less direct, however, she also noted that Clayton "could complete simple and repetitive tasks." In addition, Dr. Alperin's notes from her mental status exam are generally consistent with the ALJ's RFC finding. She noted that Clayton had adequate hygiene, appropriate behavior, speech and language within normal limits. He had no disturbed thoughts or perceptual abnormalities. While his mood was depressed, he was fully oriented to time, place and person with no significant problems with concentration. (R. 315). The limitations she noted related not to her clinical observations but to Clayton's own descriptions of his impairments. For example, her opinion that he might have difficulty accepting instructions from supervisors was due to "his own report of difficulty working with authority figures." She repeatedly cited his "lack of motivation," as a factor contributing to workplace difficulty. (R. 316-17).

Dr. Parma did not opine as to Clayton's ability to perform gainful employment, however, the notes reflecting his clinical findings during repeated mental status examinations are entirely consistent with the ALJ's overall analysis of the medical evidence. Dr. Parma's last summary in the record, dated June 11, 2009, notes that Clayton was tolerating his medication "fine without any side effects." His sleep and appetite were fine, and during the fifteen minute visit, Dr. Parma observed that Clayton "makes good eye contact, [his] speech is spontaneous with normal rate and volume. His mood is fine with stable mood congruent affect. His thought process is goal-directed . . . He denied any psychotic [symptoms]. His insight and judgment is fair." (R. 411). In fact, Clayton's final three visits with Dr. Parma reflect a similar assessment with no mention in the mental status exam of

14

marked problems (or any problems) with social interaction. To the contrary, Dr. Parma notes on several occasions that Clayton believed his medication was helping him, that he displayed essentially normal behavior interacting with Dr. Parma, and stated on multiple occasions that "he gets along fine with his step-father." (R. 417, 415). While Clayton correctly points out that Dr. Parma still assessed Clayton with a GAF score of 50, the ALJ explained his resolution of any conflict between this single clinical measure, Dr. Alperin's findings and the other medical evidence.

> While progress notes further show a global assessment of function of 50 and the consultative examiner suggests significant limitations due to depression, the Claimant does not require in-patient psychiatric hospitalization. The evidence supports that he is stable with medication and able to pursue normal activities of daily living. Moreover, there is no evidence to support adverse medication side effects which would impair his ability to work, particularly to the degree alleged.

While Clayton argues the ALJ placed undue emphasis on his lack of in-patient care, the ALJ's conclusion quoted above followed his detailed review of the clinical findings – particularly those of Clayton's most recent visits to Dr. Parma. (R. 18). Moreover, it is not improper for the ALJ to consider the level and type of treatment sought by a claimant in evaluating allegations of work disabling impairment. Mickles v. Shalala, 29 F. 3d 918, 930 (4th Cir. 1994). The ALJ was not required to defer exclusively to one GAF score as a measure of Clayton's ability to perform gainful employment. Instead, it was his function to evaluate all of the medical evidence, including that from treating providers, consultative examiners, and the other agency medical experts. Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005). This discussion of the medical evidence, particularly the mental status examinations performed by Dr. Parma, Clayton's treating provider, as well as the observations of the consulting experts, adequately explain the basis for the ALJ's decision.

**C.    Substantial evidence contained in the record as a whole supports the ALJ's finding that Clayton's impairments did not preclude all work.**

The ALJ's detailed limits on Clayton's RFC account for the limitations he found in the medical record, and are supported by substantial evidence. Clayton raises two arguments to the contrary. First, he claims the RFC's physical limitations are insufficient to account for his physical impairments of obesity and left leg disorder. The ALJ limited Clayton to light work involving lifting no more than 20 pounds, with frequent lifting of objects up to ten pounds. The ALJ found Clayton could sit or walk at least six hours out of an eight hour day, with the option to sit or stand. He found no limits on postural activity, including Clayton's ability to climb, balance, stoop, kneel, crouch and crawl. (R. 15). In arguing these physical limitations are insufficient to account for his impairments, Clayton essentially relies on his own testimony. He testified that he has difficulty standing or walking for long periods of time, performs little activity at home, and has not worked in several years. (R. 27-33). Although Clayton testified concerning these physical conditions, in his motion for summary judgment, he has not identified a single medical record contradicting the ALJ's findings on his physical limitations. In fact, the medical evidence of record is entirely consistent with the limits fashioned by the ALJ. (R. 306-309; 335-340). While Clayton testified that his physical limitations were more severe, the ALJ properly evaluated his credibility and relied on the medical source opinions which amply support his RFC assessment.

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). Clayton's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth

Circuit precedent, Clayton must first satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

The ALJ must then evaluate the intensity and persistence of Clayton's symptoms and the extent to which they affect his ability to work. 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, Id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," Id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, Id. at § 416.929(c)(3).

Here, the ALJ followed this two-step inquiry. He first found that claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 28). In other words, Clayton satisfied his threshold obligation.

With regard to the second step, however, the ALJ found that Clayton's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible to the extent they were inconsistent with the RFC assessment. (R. 28). In making this determination, the ALJ summarized Clayton's medical history, including the medical evaluation by Dr. Frank Chen (R.

306-309) which essentially mirrors the limitations reflected in Clayton's RFC assessment. Clayton has not cited any medical evidence to refute Dr. Chen's assessment. The ALJ found that the record did not support pain and physical limitations of work-disabling proportions. His decision is supported by substantial evidence.

To the extent Clayton contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). The undersigned finds no error in the ALJ's findings with respect to Clayton's credibility.

In addition to the physical limitations, Clayton also challenges the evidence in support of his mental limitations, which are addressed in detail in part IV B of this Report and Recommendation. The RFC limits fashioned by the ALJ, and related to Clayton's moderate limitations in social interaction, concentration, persistence and pace, are supported by the clinical observations of his treating provider, Dr. Parma, as well as the consultative examiner, Dr. Alperin and agency consultants, Dr. Montgomery and Dr. Deaver. These four doctors all noted some difficulties Clayton had in interacting with others, which the ALJ has adequately addressed. The medical source opinions from Dr. Parma and Dr. Alperin, and the consulting opinions of Dr. Montgomery and Dr. Deaver constitute substantial evidence for his conclusion that Clayton remained capable of

18

performing light work within those limitations. The ALJ was not bound to credit only the most serious descriptions contained in Clayton's record of mental health treatment. Instead, he was required to consider all of the medical evidence and explain the basis for his decision, which the undersigned finds he has done.

**D.    The ALJ's finding of available employment was supported by substantial evidence.**

At stage five in the evaluation, the ALJ found that there were jobs which exist in significant numbers in the national economy which Clayton could perform. In doing so, the ALJ relied upon testimony from the VE, who identified the position of hand packer, with 1,300 locally available positions, and 63,000 positions available nationally, as a position Clayton could perform.

Clayton's motion for summary judgment contends that the VE improperly testified the job of hand packer was within Clayton's limitations, and challenges the ALJ's reliance on one occupation as insufficient to meet the Commissioner's burden to prove the availability of a significant number of available jobs.

Clayton's first argument relies on Section 404.1569 of the Dictionary of Occupational Titles, which describes the general duties of a hand packager. (ECF No. 12, p. 18). After reviewing the detailed description in the DOT, the undersigned does not find it inconsistent with the VE's testimony or Clayton's RFC as found by the ALJ. The description – as quoted in Clayton's brief – includes many individual duties not all of which are required by every available job within the occupation. Moreover, the VE explicitly testified that her findings were consistent with the DOT, and as such the ALJ was entitled to rely on her testimony. See SSR 00-4p, 2000 WL 1898704.

Secondly, the fact that the VE identified only one available occupation does not undermine the Commissioner's finding that a substantial number of jobs exist in the national economy. The VE

19

testified that the occupation of hand packer would yield 1,300 positions within the local economy and 63,000 within the national economy. Even a single occupation is sufficient to meet the Commissioner's burden at stage five of the evaluation process. See 20 CFR § 404.1566(b) (noting work in the national economy exists when "there is a significant number of jobs (in one or more occupations)"). The Fourth Circuit has suggested in dicta, that 110 jobs in the local economy would not constitute an insignificant number. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Other Circuits have found jobs in significant numbers at levels far below that described by the VE in this case. Craigie v. Bowen, 835 F.2d 56, 58 (3rd Cir. 1987) (200 jobs in region); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in local economy). Under these circumstances, the VE's description of the occupation of hand packer, and the number of locally available jobs was substantial evidence to support the ALJ's finding of available work.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's motion for summary judgment be GRANTED, Clayton's motion for summary judgment be DENIED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the

Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.      A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

August 18, 2011

21

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

John Harlow Klein
Montagna, Klein, Camden, LLP
425 Monticello Avenue
Norfolk, VA  23510

Kent Pendleton Porter
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA  23510

Virginia Lynn Van Valkenburg
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA  23510

Fernando Galindo, Clerk

_____
                              Deputy Clerk

_____, 2011
August 18